SARAH N. BERNEY *vs.* WILLIAM B. DINSMORE & others.

Suffolk. Nov. 16, 1885. — Jan. 12, 1886. DEVENS & GARDNER, JJ., absent.

In an action against a common carrier for the loss of a pearl ring, the plaintiff, who was not an expert, was allowed at the trial to point out a pearl corresponding to the one lost in size, color, and general appearance, and an expert was then allowed to testify as to the value of the pearl pointed out. *Held,* that the defendant had no ground of exception.

TORT for the conversion of a pearl ring. Writ dated December 29, 1882. Answer, a general denial. Trial in the Superior Court, before *Bacon,* J., who allowed a bill of exceptions, in substance as follows:

The defendants are common carriers, doing business under the name of the Adams Express Company. The plaintiff introduced evidence tending to show that she delivered to the defendants, at their office in Boston, on September 25, 1882, a box secured by a wrapper, string, and seals, which the plaintiff said contained a solitaire pearl ring and a diamond ring of hers; that the defendants carried the box to Washington, D. C., and by one of their messengers delivered it to Alfred Berney, to whom the same was directed; that when the box was opened by him the diamond ring alone was found in it; that afterwards the plaintiff told the defendants at their Boston office that the pearl ring was not received by Alfred Berney; and that neither he nor the plaintiff had had or seen the pearl ring since.

The defendants introduced evidence tending to show that the box was carried by them from Boston to Washington in the same condition and with the same contents as when received by them at their Boston office; and that it was so delivered by them to Alfred Berney; that at once, upon the plaintiff informing the defendants of her claim of non-delivery of the pearl ring, the defendants made full inquiry and investigations to ascertain whether the pearl ring had been carried and delivered, but could learn nothing additional, except that their messenger in Washington testified that he received the box for delivery in perfect condition, securely sealed, and so delivered it to Alfred Berney.

The plaintiff, who was a witness in her own behalf, testified, among other things, that the pearl ring was given to her in 1864,

by her husband, Alfred Berney, who purchased it at that time for that purpose; that she did not know what it cost; that she had worn it since it was given to her; that it was "a solitaire pearl with a high setting;" that she did not know the weight of the pearl; that she was not familiar with pearls and had had no experience with them; but that she was familiar with the pearl sued for. It was admitted by the plaintiff, and held by the judge, that she was not an expert in regard to pearls. Thereupon the plaintiff's counsel asked her the following questions: "Do you know what the size of that stone was?" to which the witness answered, "I think I do." "Whether, by examining other pearls, you can select a stone which will match the one lost, in size, color, and general appearance?" to which the witness answered, "I think I could." "Have you done so?" to which the witness answered, "I have." Two pearls set as solitaire eardrops, and in a case, were thereupon produced and shown to the witness, and she was asked, "Whether the stones exhibited are the ones selected by you, and do they match the pearl sued for in this action?" to which she answered, "I should say they were, as far as I can judge, about the size and color of the one I lost." "Do they differ in any respect from the one you lost?" to which she answered, "I do not think they do." To each of these questions and answers, and the producing and showing the two pearls, respectively, the defendants objected, and asked the judge to rule that neither of them was competent as tending to show the value of the pearl ring claimed to be lost; but the judge ruled that each, respectively, was competent for that purpose, and admitted it.

The plaintiff thereupon called one Charles M. Foss as a witness. It appeared that he was an expert as to the quality and value of pearls, and had been for thirty-five years. The plaintiff produced and offered to show to the witness the two pearls set as solitaire eardrops, which had been shown to the plaintiff when a witness; to this the defendants objected, but the judge allowed it. The witness was then permitted to testify, against the objection of the defendants, that the fair value of each of the pearls produced was $175, and that the value of pearls was about twenty-five per cent higher in 1864 than now, on account of the premium on gold. On cross-examination, he testified

that the value of pearls varied very much; that it depended entirely upon the size, shape, color, and lustre of the pearl; that great study, experience, and skill were required to enable a person to judge of a pearl, and that those produced were very fine specimens; and that a person owning and wearing a pearl, though not an expert, would be able to judge of its general appearance, and would be likely to hit the thing pretty close in trying to match it. There was no other evidence in relation to the value of the pearl ring which was material to these exceptions.

The jury returned a verdict for the plaintiff in the sum of $84.93; and the defendants alleged exceptions.

*W. B. Gale & J. W. McDonald*, for the defendants.

*H. W. Bragg*, for the plaintiff.

FIELD, J. The testimony of the plaintiff described the size, shape, color, and quality of the pearl in a manner perhaps as accurate as she was capable of using. If any other rule were adopted than that used in this case, it might be impossible to determine the value of the pearl. When the evidence is the best evidence attainable, it should be admitted, unless admitting it contravenes some established rule of law. There is no rule which requires that a witness must be an expert to testify to the size, shape, and appearance of a visible object. The witness Foss was an expert upon the value of pearls, and he was in effect asked what a pearl such as the plaintiff had described was worth, and the description given by the plaintiff was conveyed to his mind more accurately perhaps, by exhibiting to him pearls which the plaintiff had sworn to be in all respects like the one she lost, than could have been done in any other manner. The jury were to weigh this evidence with all other evidence concerning the age, condition, size, shape, color, and quality of the pearl, and the variations of value dependent upon these characteristics. We are satisfied that this method of determining the damages is more reasonable, and better supported by modern authority, than that laid down in *Armory* v. *Delamirie*, 1 Stra. 504, which was, "that unless the defendant did produce the jewel, and show it not to be of the finest water," the jury "should presume the strongest against him, and make the value of the best jewels the measure of their damages."                *Exceptions overruled.*